UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIMONE L. GREGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1107 (RJL) |
| | ) | |
| AUTISM SPEAKS, INC. *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION
(March 20, 2013) [#3]

Plaintiff, Simone L. Greggs ("plaintiff" or "Greggs"), who is proceeding *pro se*, brings this action against Mark Roithmayr, Ann Gibbons, Pat deSaules, Tracy Wilbanks, and Linda LePage (collectively, the "individual defendants"), in addition to Autism Speaks Inc. ("Autism Speaks") (collectively, "defendants"), seeking declaratory and injunctive relief, as well as compensatory and punitive damages, for numerous causes of action relating to Autism Speaks' rescindment of an offer of employment to plaintiff. Before the Court is defendants' Motion to Dismiss [Dkt. #3], contending that plaintiff's complaint fails to state a claim for which relief can be granted. Upon consideration of the parties' pleadings, relevant law, and the entire record therein, the defendants' Motion to Dismiss is GRANTED.

BACKGROUND

Simone L. Greggs is a 44 year-old resident of Prince George's County, Maryland with two children, one of which is autistic. Compl. ¶¶ 7, 17, ECF No. 1. Plaintiff

1

previously worked for several non-profit organizations in a fundraising and event planning capacity, including the Robert F. Kennedy Center for Justice and Human Rights. *Id.* ¶ 17.

After being laid off from her previous employment, plaintiff applied for the Walk Events Manager position at Autism Speaks in March 2012. *Id.* ¶¶ 18-19. On March 26, 2012, Autism Speaks' Director of Talent Acquisitions, Pat DeSaules, reached out to plaintiff for a preliminary interview and discussion about the Walk Events Manager position. *Id.* ¶ 20. On March 27 and April 3, 2012, plaintiff had a telephone interview and an in-person interview, respectively, with Autism Speaks' Executive Director Ann Gibbons. *Id.* ¶¶ 21-22. After another telephone interview with Autism Speaks' Regional Director, Tracey Wilbanks, on April 5, 2012, plaintiff was invited to Autism Speaks' Washington, D.C. office to meet with staff. *Id.* ¶¶ 23-24.

On April 13, 2012, Autism Speaks offered plaintiff the position, which she accepted via a signed offer letter. *Id.* ¶ 25. According to the plaintiff, Autism Speaks' employment offer was contingent on a successful background check and drug test, which she successfully passed on April 23, 2012. *Id.* ¶¶ 25, 28. As a result of her new position with Autism Speaks, plaintiff declined an employment opportunity with the Democratic National Committee at the end of April 2012. *Id.* ¶ 33. On May 6, 2012, one day prior to her start date, plaintiff contacted defendant Ann Gibbons regarding a day care issue with her autistic son, who arrives home from school early on Wednesdays. *Id.* ¶ 29. Although she proposed several ways to solve the problem, including working from home on Wednesdays, plaintiff alleges that Gibbons was unreceptive and would only allow her to

delay her start date by one week to find the appropriate solution. *Id.* On that same day, plaintiff was able to successfully resolve the daycare issue, and immediately let Gibbons know that working in the office on Wednesdays would no longer be a problem. *Id.* ¶ 30.

The next day, however, plaintiff alleges that, via a conference call with defendants Gibbons, DeSaules, Wilbanks, and Linda LePage, she learned that Autism Speaks was rescinding its employment offer because it did not want to make any adjustments for the provision of plaintiff's autistic child. *Id.* ¶ 31. On May 8, 2012, plaintiff claims that she filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendants engaged in unlawful discriminatory employment practices against her because she had a disabled child. *Id.* ¶¶ 15, 32. Plaintiff filed the instant suit on July 6, 2012. *See generally id.* Alleging violations of numerous anti-discrimination laws, as well breach of contract, plaintiff asks this Court to grant judgment in her favor, in addition to compensatory and punitive damages and an award of costs and fees. *Id.* Defendants moved to dismiss this action on July 30, 2012. *See generally* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 3. For the following reasons, defendants' motion is GRANTED.

## ANALYSIS

The defendants move to dismiss plaintiff's complaint because it "fails to state any viable cause of action against [d]efendants upon which relief can be granted." *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 2, ECF No. 3-1; Fed. R. Civ. P. 12(b)(6). Although the complaint is ambiguous as to the causes of action asserted, this Court will assume that plaintiff alleges violations of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.*, 42 U.S.C. § 1981, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and a breach of contract claim.[1] Out of an abundance of caution, this Court will also presume that plaintiff intends to bring the aforementioned claims against each of the individual defendants, as well as defendant Autism Speaks, despite her use of the word "defendant" throughout the complaint, without any specificity or plurality. *See generally* Compl.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal quotations marks omitted). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "[T]he [C]ourt need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court may, however, consider "any documents either attached to or incorporated in

---

[1] *See* Compl. ¶ 1 ("[Plaintiff] has claims of discriminatory treatment and breach of contract as a result of conduct by the [d]efendant that interferes with her right to be employed based on a disability."); *id.* ¶ 2 ("This is an action . . . to redress [d]efendant's unlawful employment practices and retaliation against [p]laintiff . . . in violation of . . . 42 U.S.C. § 1981 . . . Title VII of the Civil Rights Act of 1964 . . . and the Americans with Disabilities Act[.]"); *id.* ¶ 5 ("[T]his action involves federal questions regarding the deprivation of [p]laintiff's civil rights under Title VII, Section 1981 and the ADA."); *id.* ¶ 46 ("On May 7, 2012, [d]efendant had breach [sic] the contract by rescinding the employment offer.").

4

the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Under the aforementioned standards, plaintiff's complaint is deficient for several reasons. First, the complaint fails to plead any claim under either Title VII or 42 U.S.C. § 1981. A cause of action under Section 1981 may be brought when a plaintiff suffers an injury flowing from the racially-motivated breach of his or her contractual relationship with another party. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006). And Title VII proscribes employment discrimination on the basis of an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Far from the typical Title VII or Section 1981 case, however, plaintiff is alleging that the defendants "discriminated against [her] on the basis of *her child's disability* by denying her reasonable accommodations in order to perform the job and to take care of her [a]utistic child." Compl. ¶ 35 (emphasis added); *see also id.* ¶¶ 2, 7, 39. Because plaintiff's allegations of employment discrimination against the defendants do not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" under either Title VII or Section 1981, *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted), her causes of actions based thereon must be dismissed.

Second, the plaintiff has failed to exhaust her administrative remedies with respect to the ADA and Title VII claims. The ADA incorporates the "powers, remedies, and procedures" of Title VII, which includes the limitations period set forth in 42 U.S.C. § 2000e-5. 42 U.S.C. § 12117(a); *see also Stewart v. Dist. of Columbia*, No. 04-1444, 2006 WL 626921, at *3 (D.D.C. Mar. 12, 2006). Before initiating an action in federal court,

5

"ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it." *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997); *see also* 42 U.S.C. § 2000e-5(e)(1). More specifically, if a plaintiff wishes to bring a suit in federal court, his or her complaint must be pending before the agency or the EEOC for at least 180 days, or plaintiff must be notified by the EEOC of his or her right to sue through the issuance of a right-to-sue letter, and bring suit within ninety days. 42 U.S.C. §§ 2000e-5(f)(1), 2000e-16(c); *see Hunter v. Dist. of Columbia*, No. 09-1491, 2012 WL 5974036, at *4 (D.D.C. Nov. 29, 2012). "The purpose of the [administrative exhaustion] doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Wilson v. Peña*, 79 F.3d 154, 165 (D.C. Cir. 1996).

Accepting all of her allegations as true for purposes of this motion, plaintiff filed a formal EEOC complaint on May 8, 2012, yet initiated the present action on July 6, 2012, well before the 180-day window had run its course or plaintiff received a right-to-sue letter from the EEOC. *See* Compl. ¶ 32; Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 1, ECF No. 7. Indeed, plaintiff herself concedes that, four months after she filed this lawsuit, she still had yet to receive a right-to-sue letter from the agency, and the EEOC was still engaged in its investigation of her claims.[2] *See* Pl.'s Opp'n at 1. Because

---

[2] Defendants have supported their Rule 12(b)(6) motion with a notice of plaintiff's EEOC charge of discrimination, attached as an exhibit to defendants' briefing. *See* Defs.' Reply Mem. in Supp. of Mot. to Dismiss ("Defs.' Reply"), Ex. A, ECF No. 8; *Wiley v. NEBF Invs.*, No. 09-223, 2010 WL 114953, at *1 n.1 (D.D.C. Jan. 12, 2010) (court can consider Notice of Charge without converting motion to dismiss into motion for summary judgment). This administrative notice reflects that defendant Autism Speaks did not even

plaintiff deprived the EEOC of the opportunity to resolve the present matter administratively, her claims under Title VII and the ADA[3] in this court must be dismissed for failure to exhaust administrative remedies. *See Dahlman v. Am. Ass'n of Retired Persons (AARP)*, 791 F. Supp. 2d 68, 75 (D.D.C. 2011) ("ordinarily, receipt of a notice of right-to-sue letter is a condition precedent to the initiation of an ADA [or] Title VII . . . action in court."); *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) ("Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself.").

Last, the complaint fails to assert a viable cause of action for breach of contract against either the individual defendants or Autism Speaks. In her complaint, plaintiff contends that she was given an offer of employment by defendant Autism Speaks on April 13, 2012, which she "sign[ed] and faxed back to the organization." Compl. ¶ 25. Although the employment offer was contingent on her passing a background check and drug test, plaintiff successfully completed such tests, and was given a start date of May 7, 2012. *See id.* ¶¶ 25, 28. Plaintiff argues that, when Autism Speaks rescinded her

---

receive notice of plaintiff's discrimination charge from the EEOC until, at the earliest, October 12, 2012, over three months after plaintiff filed the instant suit. *See generally* Compl.; Defs.' Reply, Ex. A.

[3] Additionally, the notice of plaintiff's EEOC charge of discrimination, *see* Defs.' Reply, Ex. A, also demonstrates that plaintiff failed to assert a Title VII discrimination claim against defendants. This is yet another ground upon which plaintiff's Title VII claim is deficient. *See Howard v. Fenty*, 580 F. Supp. 2d 86, 90 (D.D.C. 2008) ("Plaintiffs must exhaust their Title VII claims prior to raising them for the first time in a lawsuit, and the law in this Circuit is clear that an allegation as to one type of discrimination does not exhaust all administrative remedies as to another type of alleged discrimination.").

employment offer on May 7, 2012, defendants committed a breach of contract. *See id.* ¶¶ 31, 42-47.

As an initial matter, even if the offer letter could properly be construed as an employment contract, plaintiff cannot assert a claim for breach of contract against the individual defendants because they were not parties to the alleged contract. More specifically, the offer letter is unambiguously between plaintiff and defendant Autism Speaks, and makes no mention of any of the individual defendants. *See* Defs.' Mot., Ex. A at 1 ("On behalf of Autism Speaks, we are pleased to confirm our offer of employment."). As such, plaintiff's contract-based claim against Mark Roithmayr, Ann Gibbons, Pat deSaules, Tracy Wilbanks, and Linda LePage fail.

With regard to plaintiff's breach of contract claim against Autism Speaks, plaintiff does *not* contend that the employment offer at issue is anything but an offer of at-will employment with Autism Speaks, which can be terminated "by either party for any reason, or no reason, at any time." *Hopkins v. Blue Cross and Blue Shield Ass'n*, No. 10-900, 2010 WL 5300536, at *3 (D.D.C. Dec. 21, 2010). Indeed, it is long-standing precedent in the District of Columbia that "unless a contrary contractual intent is clearly expressed, all employment is at-will." *Turner v. Fed. Express Corp.*, 539 F. Supp. 2d 404, 410 (D.D.C. 2008) (citation omitted). Thus, even if the offer letter is deemed an employment contract, plaintiff does not allege that it alters her at-will employment status with Autism Speaks in any way, and the offer letter's language is consistent with an at-will employment relationship. *See generally* Compl.; Defs.' Mot., Ex. A at 1 ("You are being employed as an 'employee-at will,' which means your employment and

compensation may be terminated, with or without cause, and with or without notice, at any time, by either Autism Speaks or yourself."). And under the at-will employment doctrine, Autism Speaks had the capacity to withdraw the offer or cease the employment relationship with plaintiff at any time, a right which Autism Speaks properly exercised on May 7, 2012. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 67 (D.D.C. 2005) ("Termination of employment, then, does not breach an at-will employment contract, because by its very terms the agreement contemplates that either party may end the employment relationship, with or without cause."); *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991). Accordingly, plaintiff's breach of contract claim must be dismissed because it fails to state a claim for which relief can be granted.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendants' Motion to Dismiss [Dkt. #3]. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge